OSCN Found Document:IN RE: AMENDMENTS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 IN RE: AMENDMENTS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS
2014 OK 17
Decided: 03/24/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 17, __ P.3d __
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE: AMENDMENTS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS - CIVIL (SECOND).

ORDER ADOPTING AMENDMENTS TO OKLAHOMA UNIFORM
JURY INSTRUCTIONS - CIVIL (SECOND)

¶1 The Court has reviewed the recommendations of the Oklahoma Supreme Court Committee for Uniform Civil Jury Instructions that proposed Instructions should be adopted. The Court finds that the revisions should be adopted as modified by the Court.

¶2 It is therefore ordered, adjudged and decreed that the revisions to the Instructions shall be available for access via internet from the Court website at www.oscn.net and provided to West Publishing Company for publication. The Administrative Office of the Courts is requested to duplicate and provide copies of the revisions to the judges of the District Courts, and the District Courts of the State of Oklahoma are directed to implement these revisions effective thirty (30) days from the date of this Order.

¶3 It is therefore ordered, adjudged and decreed that the amendments to the existing Oklahoma Uniform Jury Instructions - Civil (Second Edition), and the adoption of new Instructions, as set out in the following designated Instructions and attached to this Order, are hereby adopted: Instruction Nos. 1.2A, 1.9, 1.12, 1.13, 4.17, 5.9, 9.24, 9.26, 9.33, 9.34, 9.36, 18.1, 18.2, 21.1, 21.2, 21.3, 21.4, 21.5, 21.6, 21.7, 21.8, 21.9, 21.10, 21.11, 21.12, 21.21, 21.22, 21.23, 22.7, 28.1, 28.2, 28.3, 28.4, 28.5, 28.6, 28.7, 28.8, 28.9, 29.1, 29.2, 29.3, 29.4 & 29.5; and the Preface to Comparative Negligence Instructions shall be stricken.

¶4 The Court also accepts and authorizes the updated Committee's comments, as modified by the Court, to be published, together with the above-referenced revisions and each amended page in the revisions to be noted at the bottom thereof as follows (2014 Supp.).

¶ 5 As it did so previously, the Court today declines to relinquish its constitutional or statutory authority to review the legal correctness of these authorized Instructions when it is called upon to afford corrective relief in any adjudicative context.

¶ 6 These amended Instructions shall be effective thirty (30) days from the date this Order is filed with the Clerk of this Court.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THE 13th DAY OF MARCH, 2014.

/S/CHIEF JUSTICE

Colbert, C.J., Reif, V.C.J., Kauger, Watt, Edmondson, Combs and Gurich, JJ., - concur,

Winchester, J. - concurs in result,

Taylor, J. - concurs in part and dissents in part.

I would adopt all of the recommendations of the OUJI-CIV committee.

 

Instruction No. 1.2A. (NEW)

INTRODUCTORY INSTRUCTIONS - JUROR QUESTIONNAIRES

IN THE DISTRICT COURT OF _____________ COUNTY.
STATE OF OKLAHOMA

 [Name],
 Plaintiff,

 v.

 [Name],
 Defendant.
 
 
 )
 )
 )
 )
 )
 )
 )
 
 Case No. ______
 JUROR QUESTIONNAIRE

Each prospective juror must complete and sign this standard juror questionnaire and any supplemental questionnaire provided by the court. This questionnaire and any supplemental questionnaire shall be confidential and will be used by the judge and the attorneys to aid them in selecting the jury in this case. If you do not understand a question, please indicate. If you do not have enough room to give adequate explanation to your answer, please use the space in question 24 for additional information. If there is any question that you would rather discuss with the judge and attorneys privately outside the presence of other jurors, please mark the question with an asterisk (*).

1. Name: _____________________________________________________________

(Last) (First) (Middle initial)

2. Sex: ( ) male ( ) female

3. Marital status: ( ) married ( ) never married ( ) separated ( ) divorced ( ) widowed

4. Age: _____________

5. Place of birth: _________________________________________________________

6. Length of residency in Oklahoma (years): __________________________________

7. What county do you live in? ____________________________________________

8. List other places (city and state) you have lived: ___________________________

9. What is your occupation? ______________________________________________
(If retired or unemployed, write retired or unemployed and give your previous occupation.)

10. If you are currently employed outside the home, please provide:

Name of employer: ______________________________________________________

Job title: ______________________________________________________________

Length of time worked there: _____________________________________________

11. List other types of jobs you have held as an adult: __________________________

______________________________________________________________________

______________________________________________________________________

12. Educational background: ________________________________________________

______________________________________________________________________

______________________________________________________________________

13. If you attended college or vocational school, specify your major areas of study and any degrees or certificates you earned and whether you have taken any course in law: ____________________________________________________________________

________________________________________________________________________

14. If you have had military experience, state your highest rank, branch of service, length of service, and specify whether service was reserve or active duty: __________

______________________________________________________________________

______________________________________________________________________

15. List the organizations that you belong to or participate in, and the offices, if any, that you hold in these organizations: ________________________________________

______________________________________________________________________

______________________________________________________________________

16. If you are married, state spouse's full name, occupation and employer: _________

_______________________________________________________________________

______________________________________________________________________

17. If you have any children or step children, please provide the following information:

Child # 1: sex ___ age ____ occupation _____________________________________

Child # 2: sex ___ age ____ occupation _____________________________________

Child # 3: sex ___ age ____ occupation _____________________________________

Child # 4: sex ___ age ____ occupation _____________________________________

18. Have you ever served as a juror? ( ) yes ( ) no

If yes, please provide the following information:

Year
 Court/location
 Type of case
 were you the foreperson?
 ____
 ___________________
 _______________
 ( ) yes ( ) no
 ____
 ___________________
 _______________
 ( ) yes ( ) no
 ____
 ___________________
 _______________
 ( ) yes ( ) no
 19. Have you ever appeared as a witness in any court proceeding, either civil criminal or military? ( ) yes ( ) no

If yes, when and in what court? ____________________________________________

________________________________________________________________________

_______________________________________________________________________

20. Have you or any member of your immediate family been a party to any kind of lawsuit or court proceeding? Include all of the following:

Criminal
 ( ) yes
 ( ) no
 Bankruptcy
 ( ) yes
 ( ) no
 Civil
 ( ) yes
 ( ) no
 Workers' compensation
 ( ) yes
 ( ) no
 Divorce
 ( ) yes
 ( ) no
 Other
 ( ) yes
 ( ) no
 If yes to any, state when and in what court as to each __________________________

_______________________________________________________________________

_______________________________________________________________________

______________________________________________________________________

21. Have you, any family member, or any close friend ever worked for any attorney, a law office? ( ) yes ( ) no

If yes, state each person's name and relationship to you:

______________________________________________________________________

_______________________________________________________________________

Position held: __________________________________________________________

Name of attorney or law office: ______________________________________________

Dates of employment: _____________________________________________________

22. Have you, any family member, or any close friend ever worked in law enforcement? ( ) yes ( ) no

If the answer is yes, please identify the name of the person(s) so employed, the particular agency or department(s), the position held for such agency or department(s), and the years of employment:

___________________________________________________________________________________________________________________________________________

23. Are you presently taking medicine or have any hearing or other health issue which may affect your ability to serve as a juror? ( ) yes ( ) no

If yes, please explain: ____________________________________________________

_______________________________________________________________________

______________________________________________________________________

24. Is there any reason you could not serve as a juror? ( ) yes ( ) no

If yes, please explain: ____________________________________________________

_______________________________________________________________________

______________________________________________________________________

25. Use this space for any additional comments: ______________________________

________________________________________________________________________

_______________________________________________________________________

I affirm that the forgoing is true and correct to the best of my knowledge and belief.

 

___________________________ ________________________________

(Date and Place) (Signature)

Notes on Use

In its discretion, the trial court may direct the use of this juror questionnaire as well as supplemental questionnaires as a supplement to, rather than a substitute for voir dire. If used, juror questionnaires should be distributed to the members of the jury pool before the commencement of voir dire, and adequate time for the court and attorneys to review the jurors' responses should be allowed before voir dire begins.

Juror questionnaires should be kept confidential, and copies of them should be made available only for use during voir dire to the attorneys for the plaintiff(s) and defendant(s), and to the trial court, except as needed for appellate review. Juror questionnaires should not be made a part of the public record. After the jury has been impaneled, the original questionnaires of all impaneled or questioned jurors should be retained pursuant to Okla. Sup. Ct. R. 1.28(l) until all appeals have been concluded. All copies of juror questionnaires should be destroyed at the conclusion of the voir dire, and the originals of all questionnaires for jurors who were not questioned during voir dire should be destroyed at the conclusion of the jurors' service, unless the court orders otherwise for good cause shown. See Okla. Dist. Ct. R. 32.

Comments

This form is based on the juror questionnaire form in OUJI-CR 1-10, and it is provided to offer guidance to the trial courts in the use of juror questionnaires. A number of benefits from the use of juror questionnaires have been identified. Juror questionnaires may shorten the time required for voir dire; however, this benefit will not be realized unless attorneys refrain from rehashing the information from the questionnaires during voir dire. Another benefit is that juror questionnaires may enable the court and counsel to weed out jurors who could not serve in a case before voir dire begins, and thereby accelerate the process of sending these prospective jurors to a different case. Juror questionnaires may also highlight particular areas (such as prior employment with law enforcement or employment with an attorney or law office) for more focused inquiry during voir dire. The use of juror questionnaires provides jurors more time to think about their answers and provide more complete responses than voir dire. In addition, since jurors cannot hear the responses of other jurors when they are filling out questionnaires on their own, juror questionnaires can elicit the jurors' own opinions without the influence of the responses by other jurors. Jurors may also be more likely to reveal socially unacceptable attitudes, such as racial prejudice or sexism, in juror questionnaires. Similarly, jurors may be more apt to disclose private or embarrassing information (such as a prior criminal record) in a juror questionnaire than in open court. See Gregory P. Joseph, American Bar Association Principles for Juries & Jury Trials, SL044 ALI-ABA 653, 730 (2005); Lin S. Lilley, Let Jurors Speak the Truth, In Writing, 41 TRIAL 64 (July, 2005); Valerie Hans & Alyana Jehle, Avoid Bald Men and People with Green Socks? Other Ways to Improve the Voir Dire Process, 78 CHI-KENT L. REV. 1179, 1198 (2003).

The American Bar Association has endorsed the use of juror questionnaires. In February, 2005, the ABA House of Delegates approved 19 Principles for Juries and Jury Trials. Principle 11 states: "Courts should ensure that the process used to empanel jurors effectively serves the goal of assembling a fair and impartial jury." Paragraph A under Principle 11 provides:

Before voir dire begins, the court and parties, through the use of appropriate questionnaires, should be provided with data pertinent to the eligibility of jurors and to matters ordinarily raised in voir dire, including such background information as is provided by prospective jurors in their responses to the questions appended to the notification and summons considered in Standard 10 D. 1.

1. In appropriate cases, the court should consider using a specialized questionnaire addressing particular issues that may arise. The court should permit the parties to submit a proposed juror questionnaire. The parties should be required to confer on the form and content of the questionnaire. If the parties cannot agree, each party should be afforded the opportunity to submit a proposed questionnaire and to comment upon any proposal submitted by another party.

2. Jurors should be advised of the purpose of any questionnaire, how it will be used and who will have access to the information.

3. All completed questionnaires should be provided to the parties in sufficient time before the start of voir dire to enable the parties to adequately review them before the start of that examination.

American Bar Association, PRINCIPLES FOR JURIES AND JURY TRIALS 13 (2005). In addition, New Mexico, New York, and Pennsylvania have adopted uniform juror questionnaires for criminal cases. N. M. R. A. Crim. UJI 14-110; N. Y. Ct. R., App. E; Pa. St. R. Crim. P. 632(A)(1) ("Each prospective juror shall complete and verify the standard, confidential juror information questionnaire required by paragraph (H) of this rule, and any supplemental questionnaire provided by the court.").

While juror questionnaires may provide a number of benefits to the jury selection process, there have been concerns raised about juror privacy. Mary R. Rose, Juror's Views of Voir Dire Questions, 85 JUDICATURE 10 (2001); Paula L. Hannaford, Safeguarding Juror Privacy: A New Framework for Court Policies and Procedures, 85 JUDICATURE 18 (2001). Juror questionnaires pose a different threat to juror privacy than voir dire in open court, because juror questionnaires are written records. A concern for juror privacy is reflected in the ABA's principles for Juries and Jury Trials in Principle 7, which states: "Courts should protect juror privacy insofar as consistent with the requirements of justice and the public interest." Both New York and Pennsylvania address concerns for juror privacy by providing for destruction of juror questionnaires at the conclusion of the case. N. Y. Ct. R., App. E, ¶ A(1) ("Upon completion of the jury selection, or upon removal of a prospective juror, the questionnaires shall be either returned to the respective jurors or collected and discarded by court staff in a manner that ensures juror privacy."); Pa. St. R. Crim. P. 632 (F), (G). Similarly, the Oklahoma Supreme Court has provided for destruction of juror questionnaires. Okla. Dist. Ct. R. 32 and Okla. Sup. Ct. 1.28(l).

 

Instruction No. 1.9

Jury's Duties -- To Be Given Prior to Deliberation

Ladies and Gentlemen of the jury, that completes the argument. This case is now submitted to you for your decision and verdict.

When you have arrived in the jury room you should first choose one of the jury as a foreperson and then begin deciding the case. You must not use any method of chance in arriving at your verdict, but rest it on the opinion of each juror who agrees with it. The [forms of all possible verdicts]/ (form for your verdict) will be sent to the jury room with you, along with these written instructions of the Court. If all twelve (12) of you agree on a verdict, [select the one (1) correct form of verdict and] only your foreperson alone need sign it; if you do not all agree, but at least nine (9) or more of you do, then only those nine (9) or more agreeing will each, individually, sign the verdict form. Notify the Bailiff when you have arrived at a verdict so that you may return it in open court.

 

Instruction No. 1.12

Verdict Form
One Plaintiff, One Defendant

IN THE DISTRICT COURT OF _____________ COUNTY,
STATE OF OKLAHOMA

 [Name],
      Plaintiff,

 v.

 [Name],
      Defendant.
 
 
 )
 )
 )
 )
 )
 )
 )
 
 Case No. ______
 VERDICT FORM

We, the jury, empaneled and sworn in the above entitled cause, do, upon our oaths, find as follows:

(Check and complete either 1 or 2 below but not both)

1. _______ For Plaintiff, [name], and against Defendant, [name], and fix the amount of damages in the sum of $ ________________.

2. _______ For Defendant, [name], and against Plaintiff, [name].

 

_____________________________ ________________________________
Foreperson

_____________________________ ________________________________

_____________________________ ________________________________

____________________________ ________________________________

_____________________________ ________________________________

_____________________________ ________________________________

Notes On Use

This is a general Verdict Form that may be used in cases where there is a single plaintiff and a single defendant and comparative negligence is not an issue. This Verdict Form combines the alternative verdicts for the plaintiff and the defendant into one form. Instead of using this Verdict Form, the trial court may use separate Verdict Forms for plaintiff's and defendant's verdicts as in Instruction Nos. 9.37 and 9.40, infra. Combining alternative Verdict Forms into one form may be appropriate where there are multiple claims, including counterclaims, cross-claims, or third-party claims in the case.

 

Instruction No. 1.13

Verdict Form, Counterclaim

IN THE DISTRICT COURT OF _____________ COUNTY,

STATE OF OKLAHOMA

 [Name],
 Plaintiff,

 v.

 [Name],
 Defendant.
 
 
 )
 )
 )
 )
 )
 )
 )
 
 Case No. ______
 VERDICT FORM -- COUNTERCLAIM

We, the jury, empaneled and sworn in the above entitled cause, do, upon our oaths, find as follows:

(Check and complete either 1 or 2 below but not both)

1. _______ For Defendant, [name], and against Plaintiff, [name], and fix the amount of damages in the sum of $ ________________.

2. _______ For Plaintiff, [name], and against Defendant, [name].

 

_____________________________ ________________________________
Foreperson

_____________________________ ________________________________

_____________________________ ________________________________

____________________________ ________________________________

_____________________________ ________________________________

_____________________________ ________________________________

Notes On Use

This Verdict Form may be given to the jury separately from the Verdict Form on plaintiff's claim in cases where there is a counterclaim. The Verdict Form may be adapted for cross-claims, third-party claims, and other types of claims.

 

Instruction No. 4.17

Effect Of Income Tax On Award of Damages

NO INSTRUCTION SHOULD BE GIVEN

Comments

Title 12 O.S. 2011 § 577.4 (Laws 2011, c. 16, § 1, eff. Nov. 1, 2011), reads as follows: 

Tax Consequences of Award for Damages in Personal Injury and Wrongful Death Actions

The Oklahoma Uniform Jury Instructions (OUJI) applicable in a civil case shall include an instruction notifying the jury that no part of an award for damages for personal injury or wrongful death is subject to federal or state income tax. Any amount that the jury determines to be proper compensation for personal injury or wrongful death should not be increased or decreased by any consideration for income taxes. In order to be admitted at trial, any exhibit relating to damage awards shall reflect accurate tax ramifications.

In Missouri-K. T. R. R. v. Miller, 1971 OK 68 ¶ 38, 486 P.2d 630, 636, the Oklahoma Supreme Court ruled that the income tax consequences of a personal injury award are not a proper consideration for the jury.

 

Instruction No. 5.9

EXEMPLARY OR PUNITIVE DAMAGES- SECOND STAGE

Ladies and Gentlemen of the jury, you have found in favor of the plaintiff and granted him/her actual damages, and you have also found by a separate verdict that the defendant (acted with reckless disregard of the rights of others) (and/or) (acted intentionally and with malice towards others).

You may now, in addition to actual damages, grant the plaintiff punitive damages in such sum as you reasonably believe will punish defendant and be an example to others.

Punitive damages are not to be considered as compensation to [Plaintiff], but as punishment to [Defendant], and as an example to others to deter them from like conduct. The law does not require you to award punitive damages, and if you do so, you must use sound reason in setting the amount. You should be aware that the purpose of punitive damages is to punish and not destroy a defendant.

[You may consider evidence of actual harm to others in determining the seriousness of the hazard to the public and thus whether the conduct that harmed the plaintiff was particularly reprehensible or bad. Conduct that risks harm to many may be more reprehensible than conduct that risks harm to only a few. However, you may not use punitive damages to punish [Defendant] directly on account of harms that [Defendant] may have caused to others.]

In determining the amount of punitive damages, you may consider the following factors:

1. The seriousness of the hazard to the public arising from [Defendant]'s misconduct;

2. The profitability of the misconduct to [Defendant];

3. How long the conduct lasted and whether it is likely to continue;

4. Whether there were attempts to conceal the misconduct;

5. How aware [Defendant] was of the conduct and its consequences and how aware [Defendant] was of the hazard and of its excessiveness;

6. The attitude and conduct of [Defendant] upon finding out about the misconduct/hazard;

7. The financial condition of [Defendant];

8. (If the defendant is a corporation or other entity) The number and level of employees involved in causing or concealing the misconduct.

In no event should the punitive damages exceed the greater of: (Select One)

[$100,000.00 or the amount of actual damages you have previously awarded].

OR

[$500,000.00, or twice the amount of actual damages you have previously awarded, or the increased financial benefit derived by the defendant as a direct result of the conduct causing the injury to the plaintiff].

Notes on Use

This Instruction is based on Okla. Stat. tit. 23, § 9.1 (C)(2)(2001) 23 O.S. 2011 § 9.1. The Verdict Forms in Instruction Nos. 5.10 and 5.11 should accompany this Instruction. The bracketed paragraph of this Instruction that comes before the list of factors for punitive damages is based on the United States Supreme Court's decision in Phillip Morris USA v. Williams, 127 S.Ct. 1057 549 U.S. 346 (2007). It should be given upon request of a party if there is a significant risk of a misunderstanding by the jury that it should impose punitive damages for harm to nonparties, either because of the evidence presented at trial or argument of counsel. Id. at 356-357. The Supreme Court's opinion stated that "conduct that risks harm to many is likely more reprehensible." The Committee discussed the use of "may be" rather than "is likely", and decided that the "may be" language was more appropriate for jury instruction, because reprehensibility is a jury issue.

PREFACE TO THE COMPARATIVE NEGLIGENCE INSTRUCTIONS

The following uniform instructions reflect the status of the comparative negligence law as of November 1, 2004. This area of the law, in particular, has been the subject of a number of recent developments and may be subject to additional changes in the future. Accordingly, this preface is designed to provide a brief overview of the basic stages of the development of comparative negligence law in Oklahoma.

1. From statehood until 1973 the Doctrine of Contributory Negligence controlled in Oklahoma. That doctrine provided that any negligence on the part of the plaintiff which contributed to his injuries operated as a complete bar to his recovery from any other negligent parties.

2. The Oklahoma legislature replaced the contributory negligence doctrine in 1973 by adoption of a new comparative negligence statute. (1) Under the comparative negligence statute a plaintiff was no longer completely barred from recovery if his negligence was found to be less than fifty percent of the negligence causing his injuries. (2)

3. In Laubach v. Morgan, 1978 OK 5, ¶¶ 13-14, 588 P.2d 1071, 1074, the Oklahoma Supreme Court abolished the joint and several liability rule in multiple tortfeasor situations and adopted in its stead a rule of several liability only. Under Laubach, each defendant's liability to the plaintiff is limited to that amount which his proportionate percentage of negligence bears to the plaintiff's total damages.

4. The Oklahoma legislature enacted in 1978 a statute providing for contribution among joint tortfeasors. (3) Prior to this legislation, Oklahoma did not afford to any joint tortfeasor the right of recovery against another joint tortfeasor when the first joint tortfeasor was required to pay more than his pro rata share of plaintiff's damages.

5. Boyles v. Oklahoma Natural Gas. Co., 1980 OK 163, 619 P.2d 613, was a negligence action brought against multiple defendants, but not involving an allegation of contributory negligence on the part of the plaintiff. On appeal it was urged that the trial court erred in refusing to instruct the jury to apportion the several defendants' liability under the rule of Laubach. The Oklahoma Supreme Court responded to that contention by stating:

There is absolutely nothing in Laubach to negate the continued force of the common law rule of joint and several liability in those negligent torts which fall completely outside the purview of our comparative negligence legislation.

1980 OK 163, ¶ 10, 619 P.2d at 616. The Court in Boyles made clear that it intended to abolish the joint and several liability rule only in comparative negligence actions, and not other negligent torts.

6. In 2004, the Oklahoma Legislature adopted 23 O.S. § 15, which provides for several liability in all actions based on fault and not arising out of contract, except that a defendant is subject to joint and several liability if that defendant's percentage of negligence is greater than 50%. The statute does not apply, however, to actions brought by the state or a political subdivision of the state. Also, the statute does not apply if the plaintiff's percentage of negligence is 0%. Therefore, if the plaintiff's percentage of negligence is 0%, then Boyles v. Oklahoma Natural Gas. Co., 1980 OK 163, 619 P.2d 613, would still apply. 

1. 23 O.S.1991 § 13. Comparative negligence is a statutory substitute for the common-law concept of contributory negligence to which reference is made in Okla. Const. art. 23, § 6. The concept calls for a comparison of Plaintiffs fault vis-a-vis that of the "other side" (defendant or defendants). Comparative negligence does not mean comparing or apportioning the negligence among multiple defendants.

2. In 1979 the Comparative Negligence Act was amended to allow a plaintiff to recover if his negligence was fifty percent or less of the negligence causing his injuries.

3. 12 O.S.1991 § 832.

 

Instruction 9.24

BLUE VERDICT FORM, FOR PLAINTIFF- MULTIPLE DEFENDANTS- DIRECTIONS

If you find that the occurrence with which this lawsuit is concerned was directly caused by the negligence of one or more of the Defendants and not by any contributory negligence on the part of [Plaintiff], then you shall use the Blue Verdict Form and find in favor of [Plaintiff] against one or more of the Defendants. If you so find, [Plaintiff] is entitled to recover the full amount of any damages which you may find Plaintiff has sustained as a result of the occurrence.

Comments

See Comments to Instruction No. 9.23. This Instruction should be used only if the action accrued before November 1, 2011, or was brought by or on behalf of the State of Oklahoma. See 23 O.S.2011, § 15. Instruction 9.33 or 9.34 should be used instead of this Instruction for all other actions.

 

Instruction No. 9.26

BLUE VERDICT FORM, FOR PLAINTIFF; NON-PARTY INVOLVED- DIRECTIONS

If you find that the occurrence with which this lawsuit is concerned was directly caused by the negligence of [Defendant], or was directly caused by the negligence of both [Defendant] and [Name of Non-Party], and not by any contributory negligence on the part of [Plaintiff], then you shall use the Blue Verdict Form and find in favor of [Plaintiff]. If you so find, [Plaintiff] is entitled to recover the full amount of any damages which you may find [Plaintiff] has sustained as a result of the occurrence.

Comments

See Comments to Instruction No. 9.23. This Instruction should be used only if the action accrued before November 1, 2011, or was brought by or on behalf of the State of Oklahoma. See 23 O.S. 2011, § 15. Instruction 9.36 should be used instead of this Instruction for all other actions.

 

Instruction No. 9.33

WHITE VERDICT FORM, COMPARATIVE, TWO DEFENDANTS- DIRECTIONS

If you find that the occurrence was directly caused by the negligence of either or both of [names of the Defendants] and the contributory negligence of [Plaintiff], then you shall use the White Verdict Form and you must determine the percentage of each party's negligence.

If you find that [Plaintiff] was negligent, this This White Verdict Form requires that you fill in some percentage of negligence for [him/her Plaintiff], if you find that [Plaintiff] was contributorily negligent, and then requires that you fill in some percentage of negligence for either or both Defendants, if you find that either or both of them were negligent. These figures must total one hundred percent (100%), and may range from 0% to 100%.

If the figures you fill in as the percentage of negligence of [Plaintiff] is greater than the combined total of the figures you insert as the percentage of negligence of [names of the Defendants], then [Plaintiff] is not entitled to recover any damages. In this event, you need not fill in the space provided for the amount of Plaintiff's damages, and you should sign and return the verdict as explained later in these instructions.

If, on the other hand, the figure you fill in as the percentage of negligence of [Plaintiff] is equal to or smaller than the combined total of the figures you insert as the percentages of negligence of either or both of the Defendants, then you shall proceed, as the verdict form directs, to fill in the total amount of damages which you find were sustained by [Plaintiff]. As the verdict form advises, in determining this damages figure, you should complete completely disregard the respective percentages of negligence which you have fixed for the parties.

You are instructed that if you use the White Verdict Form, whatever dollar amount you insert as the damages sustained by [Plaintiff] will be reduced by the Court by that percentage of negligence which you have attached to [him/her] and that the amount of damages for which each of the Defendants will be liable will be limited to that percentage of negligence which you have attached to each of them.

Notes on Use

This Instruction should be used for civil actions accruing after November 1, 2011.

Comments

This Instruction assumes that the "amount of damages allocated to that tortfeasor" in 23 O.S. § 15 refers to the percentage of negligence determined by the jury.

 

Instruction No. 9.34

WHITE VERDICT FORM, COMPARATIVE, MULTIPLE DEFENDANTS- DIRECTIONS

If you find that the occurrence was directly caused by the negligence of any or all of [names of the Defendants], and the contributory negligence of [Plaintiff], then you shall use the White Verdict Form and you must determine the percentage of each party's negligence.

If you find that [Plaintiff] was negligent, this This White Verdict Form requires that you fill in some percentage of negligence for [Plaintiff], if you find that [Plaintiff] was contributorily negligent, and then requires that you fill in some percentage of negligence for all of the Defendants, if you find that any or all of them were negligent. These figures must total one hundred percent (100%), and may range from 0% to 100%.

If the figures you fill in as the percentage of negligence of [Plaintiff] is greater than the combined total of the figures you insert as the percentages of negligence of the Defendants, then [Plaintiff] is not entitled to recover any damages. In this event, you need not fill in the space provided for the amount of Plaintiff's damages, and you should sign and return the verdict as explained later in these instructions.

If, on the other hand, the figure you fill in as the percentage of negligence of [Plaintiff] is equal to or smaller than the combined total of the figures you insert as the percentages of negligence of the Defendants, then you shall proceed, as the verdict form directs, to fill in the total amount of damages which you find were sustained by [Plaintiff]. As the verdict form advises, in determining this damages figure, you should completely disregard the respective percentages of negligence which you have fixed for the parties.

You are instructed that if you use the White Verdict Form, whatever dollar amount you insert as the damages sustained by [Plaintiff] will be reduced by the Court by that percentage of negligence which you have attached to [him/her] and that the amount of damages for which each of the Defendants will be liable will be limited to that percentage of negligence which you have attached to each of them.

 

Instruction No. 9.36

WHITE VERDICT FORM, COMPARATIVE, NON-PARTY INVOLVED- DIRECTIONS

If you find that the occurrence was directly caused by the negligence of either or both [Defendant] and [name of the non-party], and the contributory negligence of [Plaintiff], then you shall use the White Verdict Form and you must determine the percentage of each person's negligence.

If you find that [Plaintiff] was negligent, this This White Verdict Form requires that you fill in some percentage of negligence for the Plaintiff, if you find that [Plaintiff] was contributorily negligent, and then requires that you fill in some percentage of negligence for either or both the Defendant and the non-party. These figures must total one hundred percent (100%), and may range from 0% to 100%.

If the figure you fill in as the percentage of negligence of [Plaintiff] is greater than the combined total of the figures you insert as the percentages of negligence of [Defendant] and [name of the non-party], then [Plaintiff] is not entitled to recover any damages. In this event, you need not fill in the space provided for the amount of Plaintiff's damages, and you should sign and return the verdict as explained later in these instructions.

If, on the other hand, the figure you fill in as the percentage of negligence of [Plaintiff] is equal to or smaller than the combined total of the figures you insert as the percentages of negligence of either or both [Defendant] and [name of the non-party], then you shall proceed, as the verdict form directs, to fill in the total amount of damages which you find were sustained by [Plaintiff]. As the verdict form advises, in determining this damages figure, you should completely disregard the respective percentages of negligence which you have fixed for the Plaintiff, the Defendant, and the non-party.

You are instructed that if you use the White Verdict Form, whatever dollar amount you insert as the damages sustained by [Plaintiff] will be reduced by the Court by the sum of the percentages of negligence which you have attached to [Plaintiff] and [name of the non-party].

 

Instruction No. 18.1

False Representation -- Elements of Liability

In order for [Plaintiff] to recover from [Defendant] on [his/her] claim of deceit, you must find that all of the following have been established by clear and convincing evidence:

1. That [Defendant] made a material representation;

2. That it was false;

3. That [Defendant] made it when [he/she] knew it was false, or made it as a positive assertion recklessly, without any knowledge of its truth;

4. That [Defendant] made it with the intention that it should be acted upon by [Plaintiff];

5. That [Plaintiff] acted in reliance upon it; and

6. That [Plaintiff] thereby suffered injury.

Notes on Use

This instruction should be accompanied by Instruction No. 3.2, supra, which has a definition of clear and convincing evidence.

Comments

D & H Co. Inc. v. Schultz, 579 P.2d 821, 824 (Okla.1978); Steiger v. Commerce Acceptance of Oklahoma City, Inc., 455 P.2d 81, 86 (Okla.1969) (all elements must be alleged and proved); Ramsey v. Fowler, 308 P.2d 654, 656 (Okla.1957); 76 O.S. 1991 2011, § 3. The Oklahoma Supreme Court set forth the elements of a claim for fraud in Rogers v. Meiser, 2003 OK 6, ¶ 17, 68 P.3d 967, 977, as follows:

The elements of common law fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his/her own detriment. Gay v. Akin, 1988 OK 150, ¶ 7, 766 P.2d 985,989; D & H Co., Inc. v. Shultz, 1978 OK 71, ¶ 11, 579 P.2d 821, 824; Ramsey v. Fowler, 1957 OK 61, 308 P.2d 654, Syllabus by the Court. Fraud is never presumed and it must be proved by clear and convincing evidence. Brown v. Founders Bank and Trust Co., 1994 OK 130, ¶ 12, n.17, 890 P.2d 855, 862.

 

Instruction No. 18.2

Nondisclosure Or Concealment -- Elements of Liability

In order for [Plaintiff] to recover from [Defendant] on [his/her] claim of deceit, you must find that all of the following have been established by clear and convincing evidence:

1. That [Defendant] concealed or failed to disclose a past or present fact which he had a duty to disclose;

2. That the fact was material;

3. That [Defendant] concealed or failed to disclose it with the intent of creating a false impression of the actual facts in the mind of [Plaintiff];

4. That [Defendant] concealed or failed to disclose it with the intention that it should be acted upon by [Plaintiff];

5. That [Plaintiff] acted in reliance upon it; and

6. That [Plaintiff] thereby suffered injury.

Notes on Use

This instruction should be accompanied by Instruction No. 3.2, supra, which has a definition of clear and convincing evidence.

Comments

Hubbard v. Bryson, 1970 OK 140, ¶ 26, 474 P.2d 407, 410 (Okla. 1970 "If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud."). See also United States v. Curtis, 537 F.2d 1091, 1097 (10th Cir. ("[F]raudulent representatiuons may be effected by deceitful statements or half-truths of the concealment of material facts."), cert. denied, 429 U.S. 962 (1976).

 

Instruction No. 21.1 

EMPLOYMENT AT WILL

The general rule is that an employment contract is terminable at will, which means that either the employer or the employee has the right to terminate the employment at any time for any reason or no reason at all without liability to the other for doing so.

Notes on Use

This Instruction should be used to introduce the Instructions in Part A of this Chapter dealing , which deal with wrongful discharge in violation of public policy and breach of employment contracts.

Comments

This Instruction is a statement of the traditional employment at will doctrine. See Burk v. K-Mart Corp., 1989 OK 22, ¶ 5, 770 P.2d 24, 26 (Okla. 1989) ("This Court has long recognized the basic principle that an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract."). The Oklahoma Supreme Court noted in the Burk case that the employment at will doctrine is subject to various statutory exceptions as well as a case law exception based on public policy. Id. ¶¶ 6, 17, 19, 770 P.2d at 26, 28, 29 at 26-28. In addition, the Supreme Court has stated that the parties to an employment contract may restrict the employer's power to discharge an employee at will through either their express or implied agreement. Hinson v. Cameron, 1987 OK 49, ¶ 14, 742 P.2d 549, 554 (Okla. 1987). The Oklahoma Supreme Court stated in the Hinson case that various factors, including statements in employer handbooks and an employee's detrimental reliance on the employer's past practices, may be considered to determine whether an implied contract right to job security exists. Id. ¶ 14, 742 P.2d at 554-55. It has also held, though, that an implied obligation of good faith and fair dealing is not applicable to the termination of employment contracts. 1989 OK 22, ¶ 22, 770 P.2d at 29. The following Instructions are concerned with these exceptions to the employment at will doctrine.

 

Instruction No. 21.2

Wrongful Discharge - Public Policy Exception
- Refusal to Violate Public Policy

There is an exception to the general rule that an employment contract is terminable at will, if an employee is discharged for refusing to act in violation of an established and well-defined public policy. [Plaintiff] claims to have been wrongfully discharged by [Defendant] in retaliation for refusing to [set out the nature of the act that the plaintiff claims violated public policy]. In order to prevail on the claim of wrongful discharge in violation of public policy, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] was discharged from [his/her] employment with [Employer Defendant];

2. During the course of [Plaintiff]'s employment with Employer [Defendant], [Plaintiff] refused to [set out the nature of the act that the plaintiff claims violated public policy];

2.3. A significant factor in the decision to discharge [Plaintiff] was retaliation for Plaintiff's refusal to [set out the nature of the act that the plaintiff claims violated public policy]; and

3. 4. [Plaintiff] was damaged as a result of the discharge.

Notes on Use

This Instruction should be used with Instruction Nos. 21.1, 21.5, 21.6, 21.9, and 21.11 in cases where the plaintiff is relying on the public policy exception to the employment at will doctrine and claiming that the discharge was in retaliation for plaintiff's refusal to act in violation of an established and well-defined public policy. For an Instruction where the plaintiff's claim is that the discharge was in retaliation for plaintiff's performing an act consistent with a clear and compelling public policy. See Instruction No. 21.3, infra. For an Instruction where the plaintiffs claim is that the discharge was on account of unlawful employment discrimination, see Instruction No. 21.4, infra.

Comments

This Instruction is based on the public policy exception to the employment at will doctrine that was recognized in Vannerson v. Board of Regents of the Univ of Oklahoma, 1989 OK 125, 784 P.2d 1053 (Okla. 1989); Burk v. K-Mart Corp., 1989 OK 22, ¶¶ 17-20, 770 P.2d 24, 28-29 (Okla. 1989); and Hinson v. Cameron, 1987 OK 49, ¶ 10, 742 P.2d 549, 552-53 (Okla. 1987).

The Instruction covers those cases where the plaintiff claims the discharge was in retaliation for the plaintiff's refusal to act in violation of a public policy. Accordingly, it does not include bad faith or malice as a separate element. See generally Gilmore v. Enogex, Inc., 1994 OK 76, ¶ 11, 878 P.2d 360, 364 (Okla. 1994) (public policy exception requires that the employer was motivated by either bad faith, malice, or retaliation).

 

Instruction No. 21.3

Wrongful Discharge - Public Policy Exception --
Consistant Consistent With Public Policy

There is an exception to the general rule that an employment contract is terminable at will, if an employee is discharged for performing an act consistent with a clear and compelling public policy. [Plaintiff] claims to have been wrongfully discharged by [Defendant] in retaliation for [set out the nature of the act that the plaintiff claims is protected]. In order to prevail on the claim of wrongful discharge in violation of public policy, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] was discharged from [his/her] employment with [Defendant];

2. During the course of [Plaintiff]'s employment with Defendant, [Plaintiff] [set out the nature of the act that the plaintiff claims is protected].

3. A significant factor in the decision to discharge [Plaintiff] was retaliation for Plaintiff's [set out the nature of the act that the plaintiff claims is protected], and

4. [Plaintiff] was damaged as a result of the discharge.

Notes on Use

This Instruction should be used with Instruction Nos. 21.1, 21.6, 21.9, and 21.11 in cases where the plaintiff is relying on the public policy exception to the employment at will doctrine and claiming that the discharge was in retaliation for plaintiff's performing an act consistent with a clear and compelling public policy. For an Instruction where the plaintiff's claim is that the discharge was in retaliation for plaintiff's refusal to act in violation of an established and well-defined public policy, see Instruction No. 21.2, supra. For an Instruction where the plaintiffs claim is that the discharge was on account of employment discrimination, see Instruction No. 21.4, infra.

 

Instruction No. 21.4

Wrongful Discharge - Public Policy Exception - Employment Discrimination

There is an exception to the general rule that an employment contract is terminable at will, if an employee is discharged in violation of the public policy against unlawful employment discrimination. [Plaintiff] claims to have been wrongfully discharged by [Defendant] because of [his/her] [set out Plaintiffs protected status]. In order to prevail on the claim of wrongful discharge in violation of public policy, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] was discharged from [his/her] employment with [Employer];

2. [Plaintiff] is [set out Plaintiffs protected status].

3. A significant factor in [Defendant]'s discharge of [Plaintiff] was unlawful employment discrimination against [him/her] because of [his/her] [set out Plaintiffs protected status]; and

4. [Plaintiff] was damaged as a result of the discharge.

Notes on Use

This Instruction should only be given if a cause of action accrued prior to the effective date of 25 O.S. Supp. 2011 § 1350 (eff. November 1, 2011).

This Instruction should be used with Instruction Nos. 21.1, 21.7, 21.9, and 21.11 in cases where the plaintiff is relying on the public policy exception to the employment at will doctrine and claiming that the discharge was on account of employment discrimination,. For an Instruction where the plaintiffs claim is that the discharge was in retaliation for plaintiffs refusal to act in violation of an established and well-defined public policy, see Instruction No. 21.2, supra . For an Instruction where the plaintiffs claim is that the discharge was in retaliation for plaintiffs performing an act consistent with a clear and compelling public policy, see Instruction No. 21.3, supra.

Comments

In Tate v. Browning-Ferris, Inc., 1992 OK 72 , ¶ 10, 833 P.2d 1218, 1225, the Oklahoma Supreme Court held that the public policy exception was applicable to a racially motivated discharge or one in retaliation for an employee's filing a racial discrimination complaint. Later, in Kruchowski v. The Weyerhauser Co., 2008 OK 105, ¶ 23, 202 P.3d 144, and Shirazi v. Childtime Learning Center, 2009 OK 13, ¶ 12, 204 P.3d 75, the Supreme Court decided that the public policy exception also applied to victims of unlawful discrimination, because victims of all forms of employment discrimination, including race, color, religion, sex, national origin, age and handicap, must receive evenhanded treatment under art. 5, § 46 of the Oklahoma Constitution.

 

Instruction No. 21.5

Employee Discharged For Refusing to Violate Public Policy

In order to win on the claim of wrongful discharge [Plaintiff] must show that [Defendant] required [him/her] to commit an act that was contrary to a clear statement of public policy of Oklahoma [or the United States]. You are instructed that the following acts are forbidden by law [or the Constitution or a statute]:

Notes on Use

The trial court should inform the jury of the nature of the activities that are against public policy so that the jury can determine whether the defendant instructed or required the plaintiff to perform any of them as part of the employment.

Comments

The trial court has the responsibility for determining public policy, and "it is then the jury's duty to examine the facts and decide if the public policy was violated." Pearson v. Hope Lumber & Supply Co., Inc., 1991 OK 112, ¶ 4, 820 P.2d 443, 444 (Okla. 1991).

 

Instruction No. 21.6

Employee Discharged For Performing Act Consistent With Public Policy

In order to win on the claim of wrongful discharge [Plaintiff] must show that [Defendant] discharged [him/her] for performing an act that was consistent with a clear and compelling public policy of Oklahoma [or the United States]. You are instructed that [describe the act] is such an act [or the following are such acts:] ]:.

Notes on Use

These Instructions may be adapted for use in retaliatory discharge cases under 85 O.S. 1991 § 5. In such cases, the last sentence of this Instruction should be modified to read: "You are instructed that [filing a claim for Workers' Compensation in good faith, or retaining a lawyer in connection with a claim for Workers' Compensation, or testifying in a Workers' Compensation case] is such an act."

Comments

The Oklahoma Supreme Court held in Smith v. Farmers Coop. Ass'n of Butler, 1992 OK 11, ¶¶ 13-15, 825 P.2d 1323, 1326-27 (Okla. 1992), that the public policy exception applied to the discharge of an at will employee, who was also a city mayor, in retaliation for his voting to deny his employer's request for a zoning variance. Similarly, the Supreme Court determined in Groce v. Foster, 1994 OK 88 ¶ 1, 880 P.2d 902, 903 (Okla. 1994), that an employee's right to file a negligence action against a third party employee for on the job injuries was protected under the public policy exception. In contrast, in Vannerson v. Board of Regents of the Univ. of Oklahoma, 1989 OK 12, ¶ 10, 784 P.2d 1053, 1055 (Okla. 1989), the Supreme Court held that a violation of a University of Oklahoma internal policy on maintaining accurate records did not "rise to the level of a constitutional, statutory or decisional statement of public policy of the State of Oklahoma." Accordingly, it reversed a plaintiff's judgment on a wrongful discharge claim that was based on the public policy exception. In addition, in Gilmore v. Enogex, Inc., 1994 OK 76, ¶¶ 14, 17, 21, 878 P.2d 360, 368 365-68 (Okla. 1994), the Supreme Court decided that an employee's discharge for refusal to submit to a random drug test did not come within the public policy exception. See also McKennon v. Nashville Banner Publishing Co., 115 S.Ct. 879, 885-86 513 U.S. 352, 360-61 (1995) (after-acquired evidence of employee wrongdoing is not complete bar to recovery, but it may be taken into account in determining the appropriate remedy); Mosley v. Truckstops Corp. of Am., 1993 OK 79, ¶ 21, 891 P.2d 577, 585 (Okla. 1993) ("A jury instruction which relieves an employer of liability for terminating an employee engaged in misconduct discovered after the employee was terminated is inopposite [sic] to Oklahoma law and giving the instruction is reversible error. ") (emphasis in original).

 

Instruction No. 21.7

Employee Discharged Because Of Discrimination

In order to prevail on the claim of wrongful discharge [Plaintiff] must show that [Defendant] discharged [him/her] because of [his/her] [set out the protected status]. You are instructed that under [federal and/or Oklahoma] law an employee may not be discharged because of [his/her] [set out the protected status].

Notes on Use

This Instruction should only be given if a cause of action accrued prior to the effective date of 25 O.S. Supp. 2011 § 1350.

Included among the typical categories of protected status under federal and Oklahoma law are race, color, national origin, religion, gender, disability, and age. Additional categories may be protected under constitutional, statutory, and decisional law. The judge has the responsibility of determining whether the plaintiff has a protected status.

Comments

The Oklahoma Supreme Court held in Tate v. Browning-Ferris, Inc ., 1992 OK 72 , ¶ 10, 833 P.2d 1218, 1225, that the public policy exception was applicable to a racially motivated discharge. Later, in Kruchowski v. The Weyerhauser Co., 2008 OK 105, ¶ 23, 202 P.3d 144, and Shirazi v. Childtime Learning Center, 2009 OK 13, ¶ 12, 204 P.3d 75, the Supreme Court decided that the public policy exception also applied to victims of unlawful discrimination, because victims of all forms of employment discrimination must receive evenhanded treatment under art. 5, § 46 of the Oklahoma Constitution.

 

Instruction No. 21.8

Constructive Discharge

An employer is considered to have discharged an employee if the employer intentionally made or allowed either knew or should have known that the employee's working conditions to become were so intolerable that a reasonable person in the employee's situation would feel that [he/she] had no choice but to quit. You should consider whether the employer physically threatened or humiliated the employee, how often the employer did so, and whether the employer unreasonably interfered with the employee's work performance.

Notes on Use

This Instruction is intended for cases where there is a jury issue concerning constructive discharge of an employee.

Comments

This Instruction is derived from the test for constructive discharge set out in Collier v. Insignia Financial Group, 1999 OK 49, ¶ 10, 981 P.2d 321, 324 one on constructive discharge that the Oklahoma Supreme Court approved for Workers' Compensation retaliatory discharge cases under Okla. Stat. tit. 85, 5 (1991), in Wilson v. Hess-Sweitzer & Brant, Inc., 864 P.2d 1279, 1282-83 (Okla. 1993). The Supreme Court has not yet ruled whether constructive discharge is applicable to public policy tort cases.

 

Instruction No. 21.9 

Significant Factor For Discharge

The evidence may show that [Plaintiff] was discharged for more than one reason. Although [Plaintiff] need not prove that [set out what plaintiff claims violated public policy] was the only reason [he/she] was discharged, [Plaintiff] must prove that the [set out what plaintiff claims violated public policy] was a significant factor in the decision of [Defendant] to discharge [him/her]. In order for you to decide that [set out what plaintiff claims violated public policy] was a significant factor, you must determine whether [Defendant] would have discharged [Plaintiff] even if [Plaintiff] had [not] [set out the act that Plaintiff either performed or refused to perform] [or was not a (set out the protected status)], and everything else remained the same.

Notes on Use

This Instruction should be given only if there is evidence offered of more than one reason for the employee's discharge, and one reason was contrary to public policy and the other was not.

Comments

This Instruction is drafted in light of the decision of the Tenth Circuit Court of Appeals in White v. American Airlines, Inc., 915 F.2d 1414 (10th Cir. 1990). Applying Oklahoma law, the Tenth Circuit reversed a judgment for an employee on a jury verdict in a wrongful discharge case because the trial court failed to instruct the jury that the employer should be liable only if the discharge of the employee was "significantly motivated" by the employee's refusal to commit perjury. 915 F.2d at 1421. See also Estrada v. Port City Properties, Inc., 2011 OK 30, n. 20, 258 P.3d 495, 502 ("[I]f retaliation motivations comprise a significant factor in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violated the intent of [85 O.S. 2001,] § 5."); Vasek v. Board of County Commissioners, 2008 OK 35, ¶ 14, 186 P.3d 928, 932 (wrongful discharge claim must allege discharge of employee "in significant part for a reason that violates an Oklahoma public policy goal"). The last sentence of the Instruction is based on Judge Easterbrook's suggested instruction in Gehring v. Case Corp., 43 F.3d 340, 344 (7th Cir. 1994).

 

Instruction No. 21.10

Contractual Limitations On Discharge

One of the exceptions to the general rule that an employment contract is terminable at will arises when an employer and an employee agree that an employer can only discharge an employee [Specify Substantive Restrictions on Discharge, e.g., (for certain reasons), (under certain conditions), or (after a certain amount of time)].

Sometimes this agreement is expressed directly in the form of a written contract which specifically states when, how, or why an employee may be discharged.

Other times, this agreement may be implied from things the employer has said to the employee, [orally or in writing], such as [statements in an employer's handbook], [statements in an employer's policy manuals], [oral promises made by the employer to the employee regarding the employment relationship], [the employer's past practices in dealing with employees].

In this case, [Plaintiff] has alleged that [he/she] had an [express/implied] agreement, or contract, with [his/her] employer that [he/she] would not be discharged except for [Specify Reasons, Conditions, Time Limitations, etc.] and that the [Defendant] breached this agreement, or contract, when [Defendant] discharged [him/her].

In order for [Plaintiff] to prevail, [he/she] must prove that:

1. [Defendant] made an offer to [Plaintiff] to accept [or continue] [his/her] employment;

2. [Defendant]'s offer included either express or implied terms that [Plaintiff] would be discharged only [Specify Reasons, Conditions, Time Limitations, etc.];

3. These terms were definite and of the sort that a reasonable person would justifiably rely upon;

4. [Plaintiff] relied upon these terms when [he/she] accepted the offer by starting to work for [Defendant] [or continuing to work for] [Defendant] if the offer was made during the course of [Plaintiff]'s employment with [Defendant];

5. [Defendant] discharged [Plaintiff] [(for a reason(s) other than those)/(under conditions other than those)/(prior to the time)] contained in the express or implied terms agreed upon by the [Plaintiff] and the [Defendant]; and

6. [Plaintiff] suffered damages as a direct result of the discharge.

Notes on Use

This Instruction should be used along with Instruction Nos. 21.1 and 21.12 in cases where the plaintiff claims that a contract with the employer limits the employer's power to discharge the employee at will.

Comments

The Oklahoma Supreme Court recognized in Hinson v. Cameron, 1987 OK 49, ¶ 14, 742 P.2d 549, 554 (Okla. 1987), that implied contractual provisions may restrict an employer's freedom to discharge an at will employee. The implied contractual provisions may arise from a variety of sources, including employee manuals, oral assurances, and company policies, which may be construed as offers for unilateral contracts that are accepted by employees either entering employment or continuing employment. See generally Johnson v. Nasca, 1990 OK CIV APP 87, ¶ 6, 802 P.2d 1294, 1296 (Okla. Ct. App. 1990) ("[A] handbook alone may constitute an offer of a unilateral contract."); Langdon v. Saga Corp., 1976 OK CIV APP 65, ¶ 10, 569 P.2d 524, 528 (Okla. Ct. App. 1976) ("We thus conceive personnel policies extending benefits as unilateral offers which are accepted by continued performance."); Jackson v. Integra, Inc., 952 F.2d 1260, 1261 (10th Cir. 1991) (concluding that Oklahoma law would allow an employee manual to create an implied contract in appropriate circumstances); Carnes v. Parker, 922 F.2d 1506, 1510-11 (10th Cir. 1991) (under Oklahoma law, employment at will relationship was altered by personnel manual); Williams v. Maremont Corp., 875 F.2d 1476, 1484 (10th Cir. 1989) (in order for statements in employee handbook to alter employment at will contract there must be a showing that they induced acceptance or continuation of employment).

The Oklahoma Supreme Court has also held that for an employer's promises to restrict its power to discharge an employee, they must be in definite terms, rather than vague assurances. Hayes v. Eateries, Inc., 1995 OK 108, ¶ 12, 905 P.2d 778, 783 (Okla. 1995); Gilmore v. Enogex, Inc., 1994 OK 76, ¶ 25, 878 P.2d 360, 368 (Okla. 1994). See also Avey v. Hillcrest Medical Ctr., 1991 OK CIV APP 48, ¶ 10, 815 P.2d 1215, 1217 (Okla. Ct. App. 1991) (neither employee handbook nor policy and procedure manual gave assurances of job security to at will employees); Dupree v. United Parcel Serv., Inc., 956 F.2d 219, 222-23 (10th Cir. 1992) (statements in policy manuals and oral statements were too vague to create an implied contract). In addition, an employee's reliance on the employer's promises "must be reasonable under an objective standard, not merely the subjective belief of the employee." Hayes, supra, 1995 OK 108, ¶ 17, 905 P.2d at 784.

 

Instruction No. 21.11

Wrongful Discharge - Damages

If you find in favor of [Plaintiff] on the issue of liability, then you must determine the amount that will reasonably and fairly compensate [him/her] for the damages [he/she] suffered as a direct result of the discharge. In fixing the amount of damages, you may consider the following elements:

A. The difference between the amount that [Plaintiff] was entitled to under the employment contract with [Defendant] and what [Plaintiff] has earned since the discharge [or could have earned using reasonable diligence in finding employment of comparable quality as the employment with [Defendant]]; [and]

[B. The loss of earnings in the future that [Plaintiff] would be reasonably likely to suffer as a direct result of the discharge, if [he/she] used reasonable diligence in finding employment of comparable quality as the employment with [Defendant];] and

C. Any physical or mental distress or anguish that [Plaintiff] suffered as a result of the discharge.

Notes on Use

This Instruction should be used if the plaintiff is seeking recovery in tort under the public policy exception to the employment at will doctrine (Instruction Nos. 21.2-21.9). Instruction No. 21.12, infra, should be used if the plaintiff is relying on a breach of contract theory (Instruction No. 21.10). Paragraph B is bracketed because the Oklahoma law is unclear whether future earnings are recoverable under a tort theory.

Comments

Because the Oklahoma Supreme Court has not yet decided the issue, it is not certain whether future damages are recoverable for wrongful discharge. But cf. Marshall v. TRW, Inc., 900 F.2d 1517, 1522 (10th Cir. 1990) (future damages could be awarded in lieu of reinstatement under Okla. Stat. tit. 85, §§ 5-6 (1991) only upon a showing of continuing hostility in the workplace that would make reinstatement inappropriate). Instruction No. 5.5 should be used in addition to this Instruction if punitive damages are sought. In retaliatory discharge cases brought pursuant to 85 O.S. 2011, § 341, Instruction No. 5.5 should be modified to state that the punitive damages may not exceed the $100,000. See id. § 341(E). For a discussion of punitive damages in retaliatory discharge cases under 85 O.S. 1991 § 5, see Wilson v. Hess-Sweitzer & Brant, Inc., 1993 OK 156, ¶¶ 2-12, 864 P.2d 1279, 1280-82. On the issue of the recovery of damages for mental distress, see Williams v. ABS Enters, Inc., 1987 OK CIV APP 6, ¶ 7, 734 P.2d 854, 857 (recovery for mental anguish allowed when employee was discharged for filing a Workers' Compensation claim).

 

Instruction No. 21.12

Breach Of Employment Contract - Damages

If you find in favor of [Plaintiff] on the issue of liability, then you must determine the amount of [his/her] damages. This is the amount of money that is needed to put [him/her] in as good a position as [he/she] would have been if the contract had not been breached. In this case, the amount of damages should be determined as follows:

A. The difference between the amount that [Plaintiff] was entitled to under the employment contract with [Defendant] and what [Plaintiff] has earned since the discharge [or could have earned using reasonable diligence in finding employment of comparable quality as the employment with [Defendant]]; [and]

[B. The loss of earnings during the remaining term of the contract that [Plaintiff] would be reasonably likely to suffer as a direct result of the discharge, if [he/she] used reasonable diligence in finding employment of comparable quality as the employment with [Defendant].]

Notes on Use

This Instruction should be used if the plaintiff is relying on a breach of contract theory (Instruction No. 21.10). Instruction No. 21.11, supra, should be used if the plaintiff is seeking recovery in tort under the public policy exception to the employment at will doctrine (Instruction Nos. 21.2-21.9). Paragraph B should be included only if the term of the contract extended beyond the date of trial.

Comments

See Seidenbach's, Inc. v. Williams, 1961 OK 77, ¶ 9, 361 P.2d 185, 187-88 (Okla. 1961) (no recovery for mental anguish for breach of contract that did not cause physical injury).

 

Instruction No. 21.21

Employment Based Discrimination - Elements

[Plaintiff] claims that [Defendant] discriminated against [him/her] because of [his/her] [set out Plaintiff's protected status] by [specify adverse employment action such as terminating his/her employment, or failing to hire or promote him/her]. In order to prevail on the claim of employment based discrimination, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] is [set out Plaintiff's protected status].

2. [Defendant] discriminated against [him/her] because of [his/her] [set out Plaintiff's protected status] by [specify adverse employment action]; and 

3. [Plaintiff] was damaged as a result of the discrimination.

Notes on Use

This Instruction should be used in cases involving claims for employment based discrimination under 25 O.S.Supp. 2013, § 1350 along with Instruction No. 21.23, infra. The Statute provides a cause of action for discrimination arising from an employment related matter based on race, color, religion, sex, national origin, age, disability, genetic information with respect to the employee, or retaliation. If the claim involves retaliation related to employment discrimination, Instruction No. 21.22, infra, should be used instead of this Instruction. Instruction Nos. 21.8 and 21.9 may also be used as appropriate along with this and other Instructions dealing with employment based discrimination.

Comments

Prior to 2011, The Oklahoma Supreme Court recognized common law claims for wrongful discharge for employment discrimination based on the disparities of remedies available for employment discrimination for race, color, religion, sex, national origin, age, and handicap. See Shirazi v. Childtime Learning Center, 2009 OK 13, ¶ 12, 204 P.3d 75, 79; Kruchowski v. The Weyerhauser Co., 2008 OK 105, ¶ 36, 202 P.3d 144, 154. In 2011, the Oklahoma Legislature amended Oklahoma's Anti-Discrimination Act, 25 O.S. 2011 §§ 1101-1901, to create a statutory cause of action for employment based discrimination, and abolished the common law remedies for employment based discrimination. Title 25 O.S. 2013, § 1350 authorizes the filing of a civil action pursuant to a Notice of a Right to Sue from the Oklahoma Attorney General's Office of Civil Rights Enforcement, and it provides for a jury trial of any facts in dispute in the action.

The remedies provided by § 1350 are injunctive relief, backpay, and an additional amount of backpay as liquidated damages. 

 

Instruction No. 21.22

Employment Based Discrimination - Retaliation

[Plaintiff] claims that [Defendant] discriminated against [him/her] because of [his/her] [set out the protected activity relating to discrimination that Plaintiff engaged in] by [specify adverse employment action such as terminating his/her employment, or failing to hire or promote him/her]. In order to prevail on the claim of retaliation, [Plaintiff] must show by the weight of the evidence that:

1. [Plaintiff] is [set out the protected activity that Plaintiff engaged in].

2. [Defendant] retaliated against [him/her] because of [his/her] [set out the protected activity] by [specify adverse employment action]; and 

3. [Plaintiff] was damaged as a result of the retaliation.

Notes on Use

This Instruction should be used in cases involving claims for retaliation for protected activities involving discrimination under 25 O.S.Supp. 2013, § 1350 along with Instruction No. 21.23, infra.

 

Instruction No. 21.23

Employment Based Discrimination - Damages

If you find in favor of [Plaintiff] on the issue of liability, then you must determine the amount of backpay to award [Plaintiff] on account of the [specify adverse employment action]. The amount of backpay is equal to the [additional] wages and fringe benefits [Plaintiff] would have earned if [specify adverse employment action] had not occurred. [The amount of Plaintiff's earnings since termination of employment or amounts earnable with reasonable diligence must be deducted from the amount of backpay.] In addition, you may also award an additional amount as liquidated damages.

Notes on Use

The bracketed word "additional" should be included in the sentence if the case did not involve termination of employment. The third sentence in brackets should be used if the case involved termination of employment.

Comments 

The remedies available under 25 O.S.Supp. 2013, § 1350 for employment based discrimination are injunctive relief, backpay, and an additional amount as liquidated damages. The statute does not specify how the liquidated damages are to be determined. In appropriate situations the trial judge may provide an instruction which defines liquidated damages and specifies the manner of calculating liquidated damages. See McDonald v. Corporate Integris Health, 2014 OK 10, - P.3d - (C.J. Colbert concurring). 

 

Instruction No. 22.7

Exemplary or Punitive Damages -- Second Stage

Ladies and Gentlemen of the jury, you have found in favor of the plaintiff and granted him/her actual damages, and you have also found by a separate verdict that the defendant has (recklessly disregarded its duty to deal fairly and act in good faith with its insured, [Plaintiff) (and/or) (intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, [Plaintiff]).

You may now, in addition to actual damages, grant the plaintiff punitive damages in such sum as you reasonably believe will punish defendant and be an example to others.

Punitive damages are not to be considered as compensation to [Plaintiff], but as punishment to [Defendant], and as an example to others to deter them from like conduct. The law does not require you to award punitive damages, and if you do so, you must use sound reason in setting the amount. You should be aware that the purpose of punitive damages is to punish and not to destroy a defendant.

[You may consider evidence of actual harm to others in determining the seriousness of the hazard to the public, and thus whether the conduct that harmed the plaintiff was particularly reprehensible or bad. Conduct that risks harm to many may be more reprehensible than conduct that risks harm to only a few. However, you may not use punitive damages to punish [Defendant] directly on account of harms that [Defendant] may have caused to others.]

In determining the amount of punitive damages, you may consider the following factors:

1. The seriousness of the hazard to the public arising from [Defendant]'s misconduct;

2. The profitability of the misconduct to [Defendant];

3. How long the conduct lasted and whether it is likely to continue;

4. Whether there were attempts to conceal the misconduct;

5. How aware [Defendant] was of the conduct and its consequences and how aware [Defendant] was of the hazard and of its excessiveness;

6. The attitude and conduct of [Defendant] upon finding out about the misconduct/hazard;

7. The financial condition of [Defendant];

8. (If the defendant is a corporation or other entity) The number and level of employees involved in causing or concealing the misconduct.

In no event should the punitive damages exceed the greater of: (Select One) [$100,000.00 or the amount of actual damages you have previously awarded].

OR

[$500,000.00, or twice the amount of actual damages you have previously awarded, or the increased financial benefit derived by the defendant as a direct result of the conduct causing the injury to the plaintiff and other persons or entities].

Notes on Use

This instruction is based on Okla. Stat. Tit. 23, § 9.1 (C)(2) (2011). The Verdict Forms in Instruction Nos. 5.10 and 5.11, supra, should accompany this Instruction. For further discussion, see the Notes on use to Instruction 5.9, supra.

The last paragraph of this instruction is to be determined as follows:

If the defendant has been found guilty of acting with reckless disregard for its duty to deal fairly and act in good faith with its insured, then the punitive damages award should not exceed the greater of $100,000.00 or the amount of actual damages. If the defendant has been found guilty of acting intentionally and with malice breached its duty to deal fairly and to act in good faith with its insured, the award should not exceed the greater of $500,000.00, or twice the amount of actual damages awarded, or the increased financial benefit derived by the defendant as a direct result of the conduct causing the injury to the plaintiff and other persons or entities. If the punitive damages award is higher than the greater of $500,000.00 or twice the amount of actual damages, the trial judge is required to reduce that portion of the punitive damages award that exceeds the greater of $500,000.00 or twice the amount of actual damages by the amount the defendant has previously paid for punitive damages awarded in Oklahoma state court actions for the same conduct. Okla. Stat. Tit. 23, § 9.1 [23 - 9.1] (C)(2) (Supp. 1995 2009).

If the trial court has found beyond a reasonable doubt that the defendant acted intentionally and with malice and engaged in conduct that was life-threatening to humans, and also the jury has found that the defendant acted intentionally and with malice breached its duty to deal fairly and act in good faith towards its insured, there is no limit on the amount of punitive damages and the last paragraph of this instruction should be omitted.

 

Instruction No. 28.1

Defamation - Introductory Instruction

This is an action to recover damages for defamation. [Plaintiff] claims that [specify the facts that the plaintiff alleges constituted the defamation: e.g., [Defendant] published a newspaper article falsely accusing [Plaintiff] of being a thief.] Specifically, [Plaintiff] claims that the following statements were defamatory: [set out statements].

Notes on Use

This Instruction should be used to Introduce the remaining Instructions on defamation in this Chapter.

 

Instruction No. 28.2

Defamation - Elements (Public Figure Plaintiff)

In order to recover for defamation, [Plaintiff] has the burden of proving the following five elements by the greater weight of the evidence:

1. The statement exposed [Plaintiff] to public hatred, contempt, ridicule or disgrace;

2. [Defendant] communicated the statement to (a person)/persons) other than [Plaintiff];

3. (That person)/(Those persons) reasonably understood the statement to be about [Plaintiff];

4. The statement was false; however, minor inaccuracies do not amount to falsity if the statement is substantially true; and,

5. The statement caused [Plaintiff] to suffer (a financial loss)/(damage to Plaintiff's reputation and/or emotional injury).

In addition, [Plaintiff] must prove by clear and convincing evidence that:

6. [Defendant] either knew the statement was false or had serious doubt whether the statement was true or false.

Notes on Use

This Instruction should be used in cases where the plaintiff is either a public official or a public figure.

Comments

Libel is defined in 12 O.S. 2011 § 1441 as follows:

Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends.

If plaintiff alleges that the statement caused injury to the plaintiff's occupation or any of the other alternatives in § 1441 besides exposing the plaintiff to public hatred, etc., those alternatives should be substituted for exposing the plaintiff to public hatred, etc. in the first element of this Instruction.

The second element sets out the requirement for publication. For discussions of the publication requirement, see Magnolia Petroleum Co. v. Davidson, 1944 OK 182, ¶ 31, 148 P.2d 468, 471; Starr v. Pearl Vision, Inc., 54 F.3d 1548, 1552-53 (10th Cir. 1995). The third element is the "of or concerning" requirement, which connects the defamatory statement to the plaintiff. See McCullough v. Cities Service Co., 1984 OK 1, ¶ 20, 676 P.2d 833, 836; Miskovsky v. Tulsa Tribune Co., 1983 OK 73, ¶ 24, 678 P.2d 242, 248.

The fourth element is included because § 1441 appears to make the issue of falsity a part of the plaintiff's case. The United States Supreme Court has stated that a public figure plaintiff has the burden of proof on the issue of falsity in a defamation case. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775, 776-77 (1986) (also holding that a private figure plaintiff has the burden of proof on the issue of the falsity of a media defendant's speech on a matter of public concern).

Statements which cannot be proven "true" or "false", because they are opinions or conclusions based on a review of the individual's actions are privileged. Magnusson v. New York Times Co., 2004 OK 53, ¶ 13, 98 P.3d 1070, 1076. The trial judge should determine whether a statement is one of fact or an opinion. Id. 

Whether special damages (i.e., a financial loss) are required in the fifth element depends on whether the defamation is libel per se or libel per quod. If the defamatory statement is libel per quod, the court should use "a financial loss" in the fifth element, and it should use "damages to [Plaintiff]'s reputation if the defamatory statement is libel per se. Defamation is libel per se, "'when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff.' Fite v. Oklahoma Pub. Co., 146 Okla. 150, 293 P. 1073 (1930) (syllabus by the court)." Sturgeon v. Retherford Publications, Inc., 1999 OK CIV APP 78, ¶ 11, 987 P.2d 1218, 1223. In contrast, libel per quod requires extrinsic proof of the defamatory meaning. Id. Whether libel is per se or per quod is a matter of law, unless a fact issue must be determined. Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶ 35, 958 P.2d 128, 147; Brock v. Thompson, 1997 OK 127, ¶ 27, 948 P.2d 279, 292.

Slander is defined in 12 O.S.2011, § 1442 as follows:

Slander is a false and unprivileged publication, other than libel, which:

1. Charges any person with crime, or with having been indicted, convicted or punished for crime.

2. Imputes to him the present existence of an infectious, contagious or loathsome disease.

3. Tends directly to injury him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.

4. Imputes to him impotence or want of chastity; or,

5. Which, by natural consequences, causes actual damage.

Special damages are not required for slander per se, meaning that the slander comes within the first four alternatives in § 1442. Mitchell v. Griffin Television, L.L.C., 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061. Accordingly, if the defamatory statement is per quod, the court should use "a financial loss" in the sixth element, and it should use "damages to [Plaintiff]'s reputation" if the defamatory statement is slander per se. Emotional distress is not a form of special damages for slander per quod. Zeran v. Diamond Broadcasting, Inc., 203 F.3d 714, 718 (10th Cir. 2000) (applying Oklahoma law).

The last element involving the proof of the defendant's fault by clear and convincing evidence is needed because of the line of United States Supreme Court decisions beginning with New York Times v. Sullivan, 376 U.S. 2454 (1964). The Supreme Court held in the New York Times case that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 280-81: Miskovsky v. Oklahoma Publishing Co., 1982 OK 8, ¶ 11, 654 P.2d 587, 590. The requirement that the defendant made the statement with "reckless disregard" of its truth means that the defendant must have entertained serious doubt as to its truth. St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Miskovsky v. Oklahoma Publishing Co., 1982 OK 8, ¶ 15, 654 P.2d 587, 591. The Supreme Court requires "actual malice" to be proved by clear and convincing evidence. Bose Corp. v. Consumers Union, 466 U.S. 485, 513 (1984); Herbert v. Oklahoma Christian Coalition, 1999 OK 90, ¶ 17, 992 P.2d 322, 328. The United States Supreme Court has not resolved, however, whether falsity may be shown by a preponderance of the evidence or must be shown by clear and convincing evidence instead. Harte-Hanks Communications Inc. v. Connaughton, 491 U.S. 657, 661 n.2 (1989).

 

Instruction No. 28.3

Defamation - Elements (Private Figure Plaintiff)

In order to recover for defamation, [Plaintiff] has the burden of proving the following five elements by the greater weight of the evidence:

1. The statement exposed [Plaintiff] to public hatred, contempt, ridicule or disgrace; 

2. [Defendant] communicated the statement to (a person)/persons) other than [Plaintiff];

3. (That person)/(Those persons) reasonably understood the statement to be about [Plaintiff];

4. The statement was false; however, minor inaccuracies do not amount to falsity if the statement is substantially true; and,

5. [Defendant] did not exercise the care which a reasonably careful person would use under the circumstances to determine whether the statement was true or false; and,

6. The statement caused [Plaintiff] to suffer (a financial loss)/(damage to Plaintiff's reputation and/or emotional injury).

Notes on Use

This Instruction should be used in cases where the plaintiff is a private figure.

Comments

The United States Supreme Court decided in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974), that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Id. at 346-47. Soon after the Gertz decision, the Oklahoma Supreme Court adopted the negligence standard "as a reasonable balance between the right of the news media and the right of the private individual." Martin v. Griffin Television, Inc., 1976 OK 13 ¶ 23, 549 P.2d 85, 92. The fifth element in this Instruction reflects the negligence standard for defamation. 

While both Gertz and Martin were concerned with news media defendants, the Oklahoma Court of Civil Appeals has applied the negligence standard to defendants that were not news media. Trice v. Burgess, 2006 OK CIV APP 79, ¶ 3, 137 P.3d 1253, 1255-56; Bird Constr. Co., Inc. v. Oklahoma City Housing Auth., 2005 OK CIV APP 169, ¶ 7, 110 P.3d 560, 564; Tanique, Inc. v. State ex rel. Oklahoma Bureau of Narcotics & Dangerous Drugs, 2004 OK CIV APP 73, ¶¶ 29-30, 99 P.3d 1209, 1217. In Trice v. Burgess, supra, for example, a former youth director at a church brought a defamation action against the church and a minister alleging that the minister had told persons in the church and the community that the plaintiff "was terminated from his job because he was questioning his sexuality." 2006 OK CIV APP 79, at ¶ 3, 137 P.3d 1253, at 1255-56. The Court of Civil Appeals set out the elements for defamation as follows:

In order to recover for defamation, a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." 

2006 OK CIV APP 79, at ¶ 10, 137 P.3d 1253, at 1257 (quoting from Mitchell v. Griffin Television, L.L.C., 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061) (emphasis added). In Bird Constr. Co. v. Oklahoma City Housing Auth., supra, the defamation claim arose out of a letter that the defendant housing authority sent to the plaintiff's bonding company complaining about the plaintiff construction company's performance on a housing project. The Court of Civil Appeals set out the elements for libel as follows:

Libel is a form of defamation, which requires "(a) a false and defamatory statement concerning another, (b) an unprivileged publication to a third party, (c) fault amounting at least to negligence on the part of the publisher, and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

Bird Constr. Co., Inc. v. Oklahoma Housing Auth., 2005 OK CIV APP 169, ¶ 7, 110 P.3d 560, 564 (quoting from RESTATEMENT (SECOND) OF TORTS § 558 (1977)). 

Statements which cannot be proven "true" or "false", because they are opinions or conclusions based on a review of the individual's actions are privileged. Magnusson v. New York Times Co., 2004 OK 53, ¶13, 98 P.3d 1070, 1076. The trial judge should determine whether a statement is one of fact or an opinion. Id. 

Gertz also held that "the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." 418 U.S. at 349. Later in Dunn & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 763 (1985), the United States Supreme Court held that this limitation was not applicable when the defamatory statements did not involve matters of public concern. Punitive damages are not available in Oklahoma unless a defendant acted either with reckless disregard of the rights of others or intentionally and with malice. See 23 O.S.2011, § 9.1. Thus, punitive damages would not be available for defamation based on a negligence standard. In Martin, the Oklahoma Supreme Court decided that the prior Oklahoma statute that authorized presumed damages for defamation, 12 O.S. § 1446 (repealed 1986), was unconstitutional under Gertz. Accordingly, it appears that the actual malice standard would not be applicable to defamation cases in Oklahoma brought by private figure plaintiffs. 

If plaintiff alleges that the statement caused injury to the plaintiff's occupation or any of the other alternatives in § 1441 besides exposing the plaintiff to public hatred, etc., those alternatives should be substituted for exposing the plaintiff to public hatred, etc. in the first element of this Instruction.

The second element sets out the requirement for publication. For discussions of the publication requirement, see Magnolia Petroleum Co. v. Davidson, 1944 OK 182, ¶ 31, 148 P.2d 468, 471; Starr v. Pearl Vision, Inc., 54 F.3d 1548, 1552-53 (10th Cir. 1995). The third element is the "of or concerning" requirement, which connects the defamatory statement to the plaintiff. See McCullough v. Cities Service Co., 1984 OK 1, ¶ 20, 676 P.2d 833, 836; Miskovsky v. Tulsa Tribune Co., 1983 OK 73, ¶ 24, 678 P.2d 242, 248.

The fourth element is included because § 1441 appears to make the issue of falsity a part of the plaintiff's case. The United States Supreme Court has stated that a public figure plaintiff has the burden of proof on the issue of falsity in a defamation case. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775, 776-77 (1986) (also holding that a private figure plaintiff has the burden of proof on the issue of the falsity of a media defendant's speech on a matter of public concern).

Statements which cannot be proven "true" or "false", because they are opinions or conclusions based on a review of the individual's actions are privileged. Magnusson v. New York Times Co., 2004 OK 53, ¶ 13, 98 P.3d 1070, 1076. The trial judge should determine whether a statement is one of fact or an opinion. Id. 

Whether special damages (i.e., a financial loss) are required in the fifth element depends on whether the defamation is libel per se or libel per quod. If the defamatory statement is libel per quod, the court should use "a financial loss" in the fifth element, and it should use "damages to [Plaintiff]'s reputation if the defamatory statement is libel per se. Defamation is libel per se, "'when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff.' Fite v. Oklahoma Pub. Co., 146 Okla. 150, 293 P. 1073 (1930) (syllabus by the court)." Sturgeon v. Retherford Publications, Inc., 1999 OK CIV APP 78, ¶ 11, 987 P.2d 1218, 1223. In contrast, libel per quod requires extrinsic proof of the defamatory meaning. Id. Whether libel is per se or per quod is a matter of law, unless a fact issue must be determined. Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶ 35, 958 P.2d 128, 147; Brock v. Thompson, 1997 OK 127, ¶ 27, 948 P.2d 279, 292.

Slander is defined in 12 O.S.2011, § 1442 as follows:

Slander is a false and unprivileged publication, other than libel, which:

1. Charges any person with crime, or with having been indicted, convicted or punished for crime.

2. Imputes to him the present existence of an infectious, contagious or loathsome disease.

3. Tends directly to injury him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.

4. Imputes to him impotence or want of chastity; or,

5. Which, by natural consequences, causes actual damage.

Special damages are not required for slander per se, meaning that the slander comes within the first four alternatives in § 1442. Mitchell v. Griffin Television, L.L.C., 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061. Accordingly, if the defamatory statement is per quod, the court should use "a financial loss" in the sixth element, and it should use "damages to [Plaintiff]'s reputation" if the defamatory statement is slander per se. Emotional distress is not a form of special damages for slander per quod. Zeran v. Diamond Broadcasting, Inc., 203 F.3d 714, 718 (10th Cir. 2000) (applying Oklahoma law).

The last element involving the proof of the defendant's fault by clear and convincing evidence is needed because of the line of United States Supreme Court decisions beginning with New York Times v. Sullivan, 376 U.S. 2454 (1964). The Supreme Court held in the New York Times case that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 280-81: Miskovsky v. Oklahoma Publishing Co., 1982 OK 8, ¶ 11, 654 P.2d 587, 590. The requirement that the defendant made the statement with "reckless disregard" of its truth means that the defendant must have entertained serious doubt as to its truth. St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Miskovsky v. Oklahoma Publishing Co., 1982 OK 8, ¶ 15, 654 P.2d 587, 591. The Supreme Court requires "actual malice" to be proved by clear and convincing evidence. Bose Corp. v. Consumers Union, 466 U.S. 485, 513 (1984); Herbert v. Oklahoma Christian Coalition, 1999 OK 90, ¶ 17, 992 P.2d 322, 328. The United States Supreme Court has not resolved, however, whether falsity may be shown by a preponderance of the evidence or must be shown by clear and convincing evidence instead. Harte-Hanks Communications Inc. v. Connaughton, 491 U.S. 657, 661 n.2 (1989).

 

Instruction No. 28.4

Defamation - Affirmative Defense of Fair Comment

[Defendant] has raised the defense in this case that the alleged defamatory statement is privileged because it was a fair comment. A statement is a fair comment if it meets the following four requirements:

1. The statement dealt with a matter of public concern;

2. The statement was based on true or privileged facts;

3. The statement was the actual opinion of the person who made it; and 

4. The person did not make the statement only for the purpose of causing harm. 

To decide whether the statement was a fair comment, you should consider the following:

1. The way the statement was phrased;

2. The context in which the statement appeared;

3. The medium in which the statement was distributed;

4. The circumstances surrounding the statement's publication; and

5. Whether the statement implied the existence of undisclosed facts. 

Comments

In Magnussan v. New York Times, 2004 OK 53, ¶¶ 8, 23, 98 P.3d 1070, 1074, 1079, the Oklahoma Supreme Court recognized the common law fair comment privilege in Oklahoma and held that it was available as a defense against private individuals as well as public figures. The Oklahoma Supreme Court delineated the elements of the privilege as follows:

Under the common law defense of fair comment, a statement is generally privileged when it: 1) deals with a matter of public concern; 2) is based on true or privileged facts; and 3) represents the actual opinion of the speaker, but is not made for the sole purpose of causing harm. In making the privilege determination, courts look to the phrasing of the statement, the context in which it appears, the medium through which it is disseminated, the circumstances surrounding its publication, and a consideration of whether the statement implies the existence of undisclosed facts.

Id. ¶ 11, 98 P.3d at 1075 (footnote omitted). 

 

Instruction No. 28.5

Defamation - Affirmative Defense of Fair Reporting

[Defendant] has raised the defense in this case that the alleged defamatory statement is privileged because it was a fair report. A statement is a fair report if:

The statement was a fair and true report of a (legislative/judicial proceeding)/(proceeding authorized by law);

OR

The statement was (an expression of opinion)/(a criticism) of a (legislative/judicial proceeding)/(proceeding authorized by law);

OR

The statement was a criticism upon an official act of a public officer that did not falsely impute crime to the officer.

Comments

12 O.S.2011, § 1443.1 provides:

A. A privileged publication or communication is one made: First, In any legislative or judicial proceeding or any other proceeding authorized by law;

Second. In the proper discharge of an official duty.

Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and al public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.

B. No publication which under this section would be privileged shall be punishable as libel. 

In Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶ 29, 958 P.2d 128, 145. The Oklahoma Supreme Court, ruled that a defendant had the burden of asserting and proving the fair report and fair comment privileges as affirmative defenses. 

 

Instruction No. 28.6

Defamation - Affirmative Defense of Good Faith

[Defendant] has raised the defense in this case that the alleged defamatory article is privileged because it was published in good faith in a newspaper/periodical. An article is privileged under this defense if it was published in good faith and its falsity was due to an honest mistake.

If you determine that the article was published in good faith and its falsity was due to an honest mistake, Plaintiff [name] shall be entitled to recover only financial losses, such as loss of earnings/profits, [unless Plaintiff requested a retraction and Defendant [name] refused to publish the retraction].

Notes on Use

The last clause of this Instruction, referring to a retraction should be given if there is evidence presented at trial that a retraction was requested and refused. 

Comments

12 O.S. 2011 § 1446a provides:

In an action for damages for the publication of a libel in a newspaper or periodical, if the evidence shows that the article was published in good faith and that its falsity was due to an honest mistake of the facts, and the question of "honest mistake" shall be a question of fact to be determined by a jury, unless a jury be waived by the parties, the plaintiff shall be entitled to recover actual damages only unless a retraction be requested and refused as hereinafter provided. The person claiming to have been libeled shall notify the publisher, either orally or in writing, stating or setting forth the particular matter claimed to be libelous and requesting that the same be retracted. If a retraction, headed "RETRACTION" in eighteen point type or larger, be published on the same page and in the same type as were the statements complained of, in two regular issues of said newspaper or periodical, published within a reasonable time, but not to exceed two (2) weeks after such notice in a weekly newspaper, or not to exceed one (1) week in a daily newspaper, the publication of said retraction shall be full and complete satisfaction as to all other than actual damages, and the plaintiff shall not be entitled to recover other than actual damages on account of such erroneous published matter. If such a retraction be not so published, plaintiff may recover such damages as are provided by the statutes of this state, if his cause of action be maintained. This section shall not apply to any libel imputing unchastity to a woman; nor in any case in which the evidence shows the publication was made maliciously, or with a premeditated intention and purpose to injure, defame or destroy the reputation of another or to injuriously alter a person's reputation; nor to anonymous communications or publications, and provided further that this section shall not apply to any article pertaining to any candidate for any public office when said article is published within three (3) weeks of the date of the primary, runoff primary, special or general election, as the case may be. 

 

Instruction No. 28.7

Defamation - Affirmative Defense For Statement Made by Another Person

[Defendant] has raised the defense in this case that the alleged defamatory article is privileged because it was a statement made by another person. A statement is privileged under this defense if the following requirements are met:

1. Defendant is [an agent /employee of] a/an owner/licensee/operator of a (television/radio broadcasting station)/(network of television/radio broadcasting stations);

2. The statement was published/uttered in/(as a part of) a television/radio broadcast;

3. By a person other than [an agent /employee] the Defendant; and

4. Defendant did not fail to exercise due care to prevent the publication/utterance of the statement.

Comments

12 O.S.2011, § 1447.1 provides:

The owner, licensee or operator of a television and/or radio broadcasting station or network of stations, and the agents or employees of any such owner, licensee or operator, shall not be liable for any damages for any defamatory statement published or uttered in or as a part of a television and/or radio broadcast, by one other than such owner, licensee or operator, or agent or employee thereof, unless it shall be alleged and proved by the complaining party, that such owner, licensee, operator or such agent or employee, has failed to exercise due care to prevent the publication or utterance of such statement in such broadcast.

 

 Instruction No. 28.8

Defamation - Affirmative Defense of Qualified Privilege

[Defendant] has raised the defense in this case that the alleged defamatory article is privileged. A statement is privileged under this defense if [Defendant] reasonably believed:

1. The statement gave information that affected an important interest of [Identify person to whom statement was made]; and,

2. It was within generally accepted standards of decent conduct for [Defendant] to make the statement.

An important factor in favor of a finding that it was within generally accepted standards of decent conduct for [Defendant] to make the statement is that:

[Defendant] made the statement in response to a request, rather than volunteering it.

OR

[Defendant] and [Identify person to whom statement was made] were [Specify relationship between them].

This defense is not available if [Defendant] either knew the statement was false or had serious doubt whether the statement was true or false.

Notes on Use

The trial court should select whichever of the alternative factors is appropriate that supports a finding that it was within generally accepted standards of decent conduct for the defendant to have made the allegedly defamatory statement. The trial court should not include the last sentence of the Instruction unless evidence has been presented of either the defendant's knowledge of the statement's falsity or that the defendant had serious doubt whether the statement was true or false. 

Comments

The Oklahoma Supreme Court has recognized qualified privileges based upon statute as well as upon common law. See Wright v. Haas, 1978 OK 109, ¶ 6, 586 P.2d 1093, 1096-97. In Fawcett Publications, Inc. v. Morris, 1962 OK 183, ¶ 54, 377 P.2d 42, 52, the Oklahoma Supreme Court stated that as a general rule a qualified privilege has been applied in cases where "some special private relationship has been involved, such as fraternal, fiduciary, business, or professional." See also Thornton v. Holdenville General Hosp., 2001 OK CIV APP 133, ¶ 16, 36 P.3d 456, 461 ("A conditional privilege attaches to statements, which would ordinarily be defamatory, made in good faith on a subject in which the speaker has an interest or in reference to which he has or honestly believes he has a duty to perform.").

This Instruction is based upon RESTATEMENT (SECOND) OF TORTS § 595 (1977), which states:

(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person, and

(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

(2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that

(a) the publication is made in response to a request rather than volunteered by the publisher or

(b) a family or other relationship exists between the parties.

Examples of circumstances where this qualified privilege may apply include statements concerning a former employee by a former employer to a prospective employer, reports to police officers, statements by a credit rating agency to a subscriber, communications between members of a trade association, and communications between family members. See RESTATEMENT (SECOND) OF TORTS § 595 (1977) comments g, h, i, and j. A conditional privilege may also be recognized where a statement is made that concerns an interest of the maker of the statement, a common interest between the maker of the statement and its recipient, a member of the family of the maker of the statement, or a public interest. See RESTATEMENT (SECOND) OF TORTS §§ 594, 596-598 (1977). See also Trice v. Burress, 2006 OK CIV APP 79, ¶ 15, 137 P.3d 1253, 1258-59 (recognizing qualified privilege for communications between church members concerning conduct of other church members).

In Wright v. Haas, 1978 OK 109, ¶ 8, 586 P.2d 1093, 1097, the Oklahoma Supreme Court held that a qualified privilege is lost if it is abused as a result of the maker of the statement having knowledge of its falsity or acting in reckless disregard of its truth or falsity. The Oklahoma Supreme Court recognized that the standard for loss of a qualified privilege is the same as the requirement of actual malice for a public figure plaintiff. Accordingly, it held that a conditional privilege was not available as a defense for a public defamation plaintiff. Id. ¶ 9, 586 P.2d at 1097. 

 

 Instruction No. 28.9

Defamation - Measure of Damages

If you decide for Plaintiff [name], you must then fix the amount of his/her damages. This is the amount of money that will reasonably and fairly compensate him/her for the injury sustained as a result of the defamation by Defendant [name].

In fixing the amount you will award him/her you may consider the following elements:

1. Financial losses, such as loss of earnings/profits;

2. Injury to reputation and standing in the community;

3. Personal humiliation;

4. Mental anguish and suffering.

Comments

The Oklahoma Supreme Court held in Martin v. Griffin Television, Inc., 1976 OK 13, ¶ 26, 549 P.2d 85, 93, that allowable damages for defamation are not limited to out-of-pocket losses, but may also include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

 

 Instruction No. 29.1

Misappropriation of Trade Secrets -- Elements 

Plaintiff [name] claims that Defendant [name] has misappropriated trade secrets from Plaintiff by [specify the trade secrets and how Defendant misappropriated them]. In order to recover on the claim for misappropriation of trade secrets, Plaintiff has the burden of proving the following elements by the greater weight of the evidence:

1. Plaintiff [name] was the owner of trade secrets;

2. Defendant [name] misappropriated the trade secrets;

3. The misappropriation of the trade secrets was the direct cause of damages to Plaintiff.

Comments

The law of trade secrets in Oklahoma is governed by the Uniform Trade Secrets Act, 78 O.S. 2011 §§ 85-94. In Micro Consulting, Inc. v. Zubeldia, 813 F. Supp. 1514, 1534 (W.D. Okla. 1990), the United States District Court for the Western District of Oklahoma listed the elements of a trade secrets claim as: "(1) the existence of a trade secret; (2) misappropriation of this secret by the defendants; and (3) use of the secret by the defendants to the detriment of the plaintiff." The standard announced in Micro Consulting, Inc. was noted by the Oklahoma Court of Civil Appeals in MTG Guarnieri Mfg., Inc. v. Clouatre, 2010 OK CIV APP 71, ¶ 12, n.14, 239 P.3d 202, 209.

 

 Instruction No. 29.2

Trade Secret -- Definition 

A "trade secret" is information, such as a formula/pattern/compilation/program/device/method/technique/process, that meets the following thee requirements:

1. The information derives independent economic value from not being generally known;

2. The information is not readily ascertainable, through proper means, by other persons who can obtain economic value from its disclosure or use; and

3. The information is the subject of reasonable efforts to maintain its secrecy. 

Notes on Use

The trial court should select the appropriate alternative(s) in the definition based upon the evidence presented at trial. 

Comments

78 O.S. 2011 § 86(4) defines a trade secret as follows:

"Trade secret" means information including a formula, pattern, compilation, program, device, method, technique or process, that:

a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

 

 Instruction No. 29.3

Misappropriation -- Definition 

"Misappropriation" means:

1. Acquisition of another person's trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means;

OR

2. Disclosure or use of a trade secret that belongs to another person, without express or implied consent, by a person who:

(A) Used improper means to acquire knowledge of the trade secret;

OR

(B) At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(i) derived from or through a person who had utilized improper means to acquire it;

OR

(ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

OR 

(iii) derived from or through a person who owed a duty to Plaintiff [name] to maintain its secrecy or limit its use;

OR

(C) Acquired the information by accident or mistake, and before a material change of the person's position, knew or had reason to know that is was a trade secret.

Notes on Use

The trial court should select the appropriate alternative(s) in the definition based on the evidence presented at trial.

Comments

78 O.S. 2011 § 86(2) defines misappropriation as follows:

"Misappropriation" means:

a. acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

b. disclosure or use of a trade secret of another without express or implied consent by a person who:

(1) used improper means to acquire knowledge of the trade secret; or

(2) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(a) derived from or through a person who had utilized improper means to acquire it; or

(b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(3) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

 

 Instruction No. 29.4

Improper Means -- Definition 

"Improper means" includes theft/bribery/misrepresentation/(breach of a duty to maintain secrecy) / (inducing another person to breach a duty to maintain secrecy)/ espionage.

Notes on Use

The trial court should select the appropriate alternative(s) in the definition based on the evidence presented at trial.

Comments

78 O.S. 2011 § 86(1) defines improper means as follows: "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."

 

 Instruction No. 29.5

Misappropriation of Trade Secrets -- Measure of Damages 

A person who misappropriates trade secrets is liable for damages to the owner of the trade secrets. If you decide that Defendant [name] misappropriated trade secrets from Plaintiff [name], you must then fix the amount of damages. This is the amount of money that:

1. Would be a reasonable royalty for Defendant's disclosure/use of the trade secrets; 

OR

2. Will reasonably and fairly compensate Plaintiff for:

A. The actual loss caused by the misappropriation; and

B. The net profit or other benefit that Defendant unjustly received from the misappropriation to the extent that it is not taken into account in calculating the actual loss to Plaintiff; whichever of 1 or 2 is the greater.

Notes on Use

The trial court should select the appropriate alternative remedy(ies) as supported by the evidence, and the jury should return the larger amount on the Verdict Form.

Comments

78 O.S. 2011 §88(A) specifies the measure of damages for misappropriation of trade secret as follows:

Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret. 

The court may also award exemplary damages for a willful and malicious appropriation in an amount not exceeding twice the amount of compensatory damages under 78 O.S. 2011 § 88(B).





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 Oklahoma Jury Instructions- Civil Cite
Name
Level JUROR QUESTIONNAIRE
Cited  JURY'S DUTIES- TO BE GIVEN PRIOR TO DELIBERATION
Cited  EXEMPLARY OR PUNITIVE DAMAGES- SECOND STAGE
Cited  BLUE VERDICT FORM, for Plaintiffs- Multiple Defendants- Directions
Cited  BLUE VERDICT FORM, for Plaintiff: Non-Party Involved- Directions
Cited  WHITE VERDICT FORM, Comparative, Two Defendants- Directions
Cited  WHITE VERDICT FORM, Comparative, Multiple Defendants- Directions
Cited  WHITE VERDICT FORM, Comparative, Non-Party Involved- Directions
Cited  FALSE REPRESENTATION- ELEMENTS OF LIABILITY
Cited  NONDISCLOSURE OR CONCEALMENT- ELEMENTS OF LIABILITY
Cited  EMPLOYMENT AT WILL
Cited  WRONGFUL DISCHARGE- PUBLIC POLICY EXCEPTION- REFUSAL TO VIOLATE PUBLIC POLICY
Cited  WRONGFUL DISCHARGE- PUBLIC POLICY EXCEPTION- ACT CONSISTENT WITH PUBLIC POLICY
Cited  WRONGFUL DISCHARGE- PUBLIC POLICY EXCEPTION- EMPLOYMENT DISCRIMINATION
Cited  EMPLOYEE DISCHARGED FOR REFUSING TO VIOLATE PUBLIC POLICY
Cited  EMPLOYEE DISCHARGED FOR PERFORMING ACT CONSISTENT WITH PUBLIC POLICY
Cited  EMPLOYEE DISCHARGED BECAUSE OF DISCRIMINATION
Cited  CONSTRUCTIVE DISCHARGE
Cited  SIGNIFICANT FACTOR FOR DISCHARGE
Cited  CONTRACTUAL LIMITATIONS ON DISCHARGE
Cited  WRONGFUL DISCHARGE- DAMAGES
Cited  BREACH OF EMPLOYMENT CONTRACT- DAMAGES
Cited  EMPLOYMENT BASED DISCRIMINATION - ELEMENTS
Cited  EMPLOYMENT BASED DISCRIMINATION - RETALIATION
Cited  EMPLOYMENT BASED DISCRIMINATION - DAMAGES
Cited  EXEMPLARY OR PUNITIVE DAMAGES - SECOND STAGE
Cited DEFAMATION - INTRODUCTORY INSTRUCTION
Cited DEFAMATION - ELEMENTS (PUBLIC FIGURE PLAINTIFF)
Cited DEFAMATION - ELEMENTS (PRIVATE FIGURE PLAINTIFF)
Cited DEFAMATION - AFFIRMATIVE DEFENSE OF FAIR COMMENT
Cited DEFAMATION - AFFIRMATIVE DEFENSE OF FAIR REPORTING
Cited DEFAMATION - AFFIRMATIVE DEFENSE OF GOOD FAITH
Cited DEFAMATION - AFFIRMATIVE DEFENSE FOR STATEMENT MADE BY ANOTHER PERSON
Cited DEFAMATION - AFFIRMATIVE DEFENSE OF QUALIFIED PRIVILEGE
Cited DEFAMATION - MEASURE OF DAMAGES
Cited MISAPPROPRIATION OF TRADE SECRETS - ELEMENTS
Cited TRADE SECRET - DEFINITION
Cited MISAPPROPRIATION - DEFINITION
Cited IMPROPER MEANS - DEFINITION
Cited MISAPPROPRIATION OF TRADE SECRETS - MEASURE OF DAMAGES
Cited  WRONGFUL DISCHARGE- PUBLIC POLICY EXCEPTION- REFUSAL TO VIOLATE PUBLIC POLICY
Cited
Citationizer: Table of Authority
Cite
 Name
 Level
 None Found.